1
2
3
4
5
6
7
8
9
10                    UNITED STATES DISTRICT COURT

11                   EASTERN DISTRICT OF CALIFORNIA

12                          ----oo0oo----

13

14  DOYLE EUGENE CHAMPLAIN,
                                    NO. CIV. S-03-2018 FCD DAD
15              Plaintiff,

16       v.                         MEMORANDUM AND ORDER

17  CITY OF FOLSOM, a public entity,
    and DOES 1-50,
18
                Defendants.
19                          ----oo0oo----

20

21       This matter is before the court on defendant City of

22  Folsom's ("defendant") motion for summary judgment.  Plaintiff

23  Doyle Eugene Champlain resigned from his position as a

24  Infrastructure Supervisor with defendant on November 11, 2002.

25  Subsequently plaintiff filed this action alleging claims for

26  relief against defendant under (1) 42 U.S.C. § 1983; (2) Title

27  VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*

28  ("Title VII"); (3) the Americans with Disabilities Act, 42 U.S.C.

1  § 12101 *et seq.* ("ADA"); and (4) state law for constructive

2  termination.  The court heard oral argument on the motion on

3  December 2, 2005.

4      For the reasons set forth below, the court grants

5  defendant's motion.

6                         **BACKGROUND**[1]

7      In 1996, plaintiff Doyle Champlain worked for defendant as a

8  supervisor for the Sewer Division within defendant's Public Works

9  Department.  (Pl.'s Resp. to Def.'s SUF ["SUF"] # 1, filed

10  November 14, 2005.)  In April of 2002, plaintiff underwent wrist

11  surgery for an on-the-job injury.  (SUF # 3.)  Plaintiff returned

12  to work after recovering from that surgery on July 8, 2002.  (SUF

13  #4, 15.)  Upon returning to work, plaintiff became aware that he

14  would be reassigned to a different job position.  (SUF #13.)

15      In addition, when he returned to work, defendant issued a

16  notice of intent to discipline plaintiff for his handling of a

17  sewer spill that occurred on November 24, 2001.  (SUF #5.)

18  Defendant contends plaintiff was the supervisor responsible for

19  investigating and stopping the overflow caused by the sewage

20  spill.  (SUF #7.)  According to defendant, in responding to the

21  spill, plaintiff instructed some sewer department personnel to

22  only work until 4:00 p.m. that day and instructed them to go

23  home.  (SUF #8.)

24      Regarding the notice of intent to discipline, plaintiff

25  received a "Skelly" hearing, which is a disciplinary hearing

26  provided by defendant and designed to ensure plaintiff's due

27  ─────────────────

28      [1]    Except where otherwise indicated, the facts described
    below are undisputed.

                              2

1 process rights were protected.  (SUF #9.)  In July 2002,

2 plaintiff appeared at the hearing and had some opportunity to

3 defend himself.  (SUF #10.)  After the hearing concluded,

4 defendant withdrew its notice of intent to discipline plaintiff.

5 (SUF #11.)  Thereafter, defendant reassigned plaintiff to the

6 position of Infrastructure Supervisor within defendant's Street

7 Division in July or August of 2002.  (SUF # 17.)  Plaintiff

8 resigned his employment with defendant on November 11, 2002.

9 (SUF #2.)

10     On July 5, 2002, *before* plaintiff returned to work and

11 received formal notice of discipline and reassignment, plaintiff

12 applied for an Operations Manager position with the City of

13 Lincoln.  (SUF #14.)  The City of Lincoln interviewed plaintiff

14 twice, and plaintiff ultimately accepted the City's offer of

15 employment on October 15, 2002, before formally resigning his

16 position with defendant.  (SUF #18-20.)

17     Plaintiff filed the instant action on September 25, 2003.

18 On May 11, 2005, plaintiff pled guilty in state court to worker's

19 compensation fraud, relating to his employment with defendant,

20 but claims the judge changed his plea to "no contest."  (SUF

21 #23.)

**STANDARD**

23     The Federal Rules of Civil Procedure provide for summary

24 judgment where "the pleadings, depositions, answers to

25 interrogatories, and admissions on file, together with the

26 affidavits, if any, show that there is no genuine issue as to any

27 material fact."  Fed. R. Civ. P. 56(c); see California v.

28 Campbell, 138 F.3d 772, 780 (9th Cir. 1998).  The evidence must

1  be viewed in the light most favorable to the nonmoving party.

2  See Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en

3  banc).

4       The moving party bears the initial burden of demonstrating

5  the absence of a genuine issue of fact.  See Celotex Corp. v.

6  Catrett, 477 U.S. 317, 325 (1986).  If the moving party fails to

7  meet this burden, "the nonmoving party has no obligation to

8  produce anything, even if the nonmoving party would have the

9  ultimate burden of persuasion at trial."  Nissan Fire & Marine

10 Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000).

11 However, if the nonmoving party has the burden of proof at trial,

12 the moving party only needs to show "that there is an absence of

13 evidence to support the nonmoving party's case."  Celotex Corp.,

14 477 U.S. at 325.

15      Once the moving party has met its burden of proof, the

16 nonmoving party must produce evidence on which a reasonable trier

17 of fact could find in its favor viewing the record as a whole in

18 light of the evidentiary burden the law places on that party.

19 See Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th

20 Cir. 1995).  The nonmoving party cannot simply rest on its

21 allegations without any significant probative evidence tending to

22 support the complaint.  See Nissan Fire & Marine, 210 F.3d at

23 1107.  Instead, through admissible evidence the nonmoving party

24 "must set forth specific facts showing that there is a genuine

25 issue for trial."  Fed. R. Civ. P. 56(e).

26 ///

27 ///

28 ///

4

1                              **ANALYSIS**

2   **I.    Section 1983**

3        Plaintiff brings a claim against defendant under 42 U.S.C.

4   § 1983 for the *apparent* violation of his free speech rights under

5   the First Amendment, his procedural and substantive due process

6   rights under the Fifth and Fourteenth Amendments, and his right

7   to be free from unreasonable searches and seizures under the

8   Fourth Amendment.[2]  (Pl.'s Compl., filed September 18, 2003, at

9   8-9.)  Defendant alleges that it is not liable for said

10  violations of plaintiff's constitutional rights under Monell and

11  its progeny.  Monell v. Department of Social Servs., 436 U.S. 658

12  (1978) (finding a municipality may be liable under Section 1983

13  as a result of a governmental policy or custom).  The Ninth

14  Circuit has recognized three ways that a municipality can be held

15  liable under Section 1983:

16          A section 1983 plaintiff may establish municipal
            liability in one of three ways. First, the plaintiff
17          may prove that a city employee committed the alleged
            constitutional violation pursuant to a formal governmental
18          policy or a longstanding practice or custom which
            constitutes the standard operating procedure of the
19          local governmental entity.  Second, the plaintiff may
            establish that the individual who committed the
20          constitutional tort was an official with final policy-
            making authority and that the challenged action itself
21          thus constituted an act of official governmental policy.
            Whether a particular official has final policy-making
22          authority is a question of state law. Third, the
            plaintiff may prove that an official with final policy-
23          making authority ratified a subordinate's unconstitutional
            decision or action and the basis for it.

24  Gillette v. Delmore, 979 F.2d 1342, 1346-1347 (9th Cir. 1992)

25  ────────────────────

26      [2]    Although plaintiff's opposition is overly lengthy,
    confusing, and at times barely intelligible, the court has
27  nonetheless attempted to discern and adjudicate, in the light
    most favorable to plaintiff, his claims as accurately as
28  possible.

1    (internal citations and quotations omitted).

2       Plaintiff fails to establish municipal liability through any
3    of the three modes described in Gillette.  Even construed in the
4    light most favorable to plaintiff, only the first theory is even
5    arguably applicable to plaintiff's allegations under Section
6    1983.  However, with respect to alleging and demonstrating that
7    defendant maintained a "governmental policy" under Section 1983,
8    plaintiff first argues that it is not necessary to establish that
9    a policy exists.  "Folsom did not need to adopt a policy; the
10   policies are in place under the Constitution and the laws of the
11   United States and the State of California."  (Pl.'s Opp. at 11
12   and at 20.)  Plaintiff's argument is wholly without merit.
13   Pursuant to the clear dictates of Monell, to establish municipal
14   liability under Section 1983, plaintiff *must* show that the
15   defendant City acted pursuant to a formal governmental policy or
16   longstanding practice or custom.

17      While plaintiff states on one hand that he is not required
18   to demonstrate a City "policy," he also states in other portions
19   of his opposition, and attempted to do so at oral argument, that
20   defendant had several unconstitutional "policies" in place.
21   However, these policies are given short shrift by plaintiff.  For
22   example, plaintiff alleges in *conclusory* form that defendant (1)
23   had a policy of "ignoring federally protected rights" (Pl.'s Opp.
24   at 14); (2) had "no policy" prohibiting the City from making
25   false reports regarding its employees (Id.); (3) had a policy of
26   prohibiting an employee from having a second job (Id. at 15); and
27   (4) had a policy that when it had a suspicion of worker's

28

6

1  compensation fraud to request the employee resign, and only if no

2  resignation was received to file criminal charges (Id. at 19).

3  Plaintiff does not demonstrate how these alleged "policies"

4  relate to a deprivation of his constitutional rights nor what

5  precise rights were affected; how defendant deliberately or

6  consciously instituted these policies; how these policies caused

7  the constitutional violation; and in many cases does not provide

8  sufficient evidence that these alleged policies even exist.  See

9  generally Gillette, 979 F.2d at 1347, 1349 (analyzing whether

10 there was sufficient evidence to establish a policy or custom);

11 Collins v. City of San Diego, 841 F.2d 337, 341 (1988)

12 (describing when a policy or custom is sufficient to establish

13 liability under Monell).

14 Moreover, it is noteworthy that plaintiff raises alleged

15 governmental "policies," that were not alleged in his complaint,

16 for the first time in his opposition and *admits* that he lacks

17 sufficient evidence at this stage to establish the existence of a

18 policy.  "The complaint does not directly cite the practices of

19 the City of Folsom . . . but he can provide this proof upon

20 trial."  (Pl.'s Opp. at 14.)  Obviously, the court cannot

21 entertain plaintiff's eleventh-hour promise to establish

22 municipal liability at some future date.  Even after construing

23 the evidence in the light most favorable to plaintiff, a genuine

24 issue of material fact simply does not exist.  Therefore,

25 defendant's motion for summary judgment is GRANTED pertaining to

26 plaintiff's claims for violation of his "constitutional rights."

27 *///*

28

## II.  Title VII

Plaintiff alleged in his complaint a Title VII claim based on theories of harassment, extortion, retaliation, and defamation.  (Pl.'s Compl. at 9-12.)  Under Title VII, plaintiff is required to file an administrative complaint to the Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged unlawful employment practice.  42 U.S.C. § 2000e-5(e)(1); National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 119 (2002).[3]

Plaintiff admits he has failed to timely exhaust his administrative remedies under Title VII as he concedes that he has not filed a DFEH or EEOC complaint to date.  (Pl.'s Opp. at 22; Def.'s SUF # 25.)  Therefore, defendant's motion for summary judgment is GRANTED as to plaintiff's Title VII claims.

## III. ADA Claim

Plaintiff alleged a claim under the ADA against defendant in his complaint.  (Pl.'s Compl. at 13.)  In his opposition, plaintiff requests dismissal of his ADA claim because "he no longer wishes to pursue this claim in federal court."  (Opp. at 23.)  Importantly, plaintiff also admits that his work injury did not render him "disabled" under the ADA.  (Def.'s SUF # 27-29.)  Thus, defendant's motion for summary judgment as to plaintiff's ADA claim is GRANTED.

---

[3]     However, in a State, such as California, that has an entity (the Department of Fair Employment and Housing ["DFEH"]) with the authority to grant or seek relief with respect to the alleged unlawful employment practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice.  Id. at 109.

**IV.  State law claim - Constructive Termination[4]**

While plaintiff labeled his fourth claim for relief for "constructive termination," it is more properly considered as a claim for wrongful termination in violation of public policy, pursuant to Tameny v. Atlantic Richfield Co., 27 Cal. 3d 167 (1980).  Pursuant to Tameny, for plaintiff to prevail on this claim, he must show: (1) he was subjected to working conditions that violated public policy, in that he was treated intolerably in retaliation for complaining about defendant's alleged environmental violations; (2) defendant intentionally created or knowingly permitted these working conditions; (3) the conditions were so intolerable that a reasonable person in plaintiff's position would have had no reasonable alternative except to resign; (4) plaintiff resigned because of these working conditions; (5) plaintiff was harmed; and (6) the working conditions were a substantial factor in causing plaintiff's harm. See also Turner v. Anheuser Busch, Inc., 7 Cal. 4th 1238, 1251 (1994).

In moving for summary judgment, defendant argues, among other things, that plaintiff cannot demonstrate he resigned

---

[4]   The court recognizes it could decline to exercise supplemental jurisdiction over this claim in light of the fact that all federal claims for relief have been dismissed.  28 U.S.C. § 1367(c) (providing that when a court "has dismissed all claims over which it has original jurisdiction" it has discretion to decline to exercise supplemental jurisdiction).  However, here, the balance of factors weigh in favor of retaining jurisdiction over this claim, including the length of time this case has been pending in this court (since September 2003), the stage of the litigation (discovery has closed, the dispositive motion cut-off has passed, trial is set for March 21, 2006), and the overlapping nature of this claim with the others adjudicated. See Acri v. Varian Assoc., Inc., 114 F.3d 999 (9th Cir. 1994). Accordingly, the court resolves, on the merits, defendant's motion with respect to this state law claim as well.

*because of* the alleged intolerable working conditions (even
assuming plaintiff had evidence of said conditions).  As support,
defendant relies on Wagner v. Sanders Assoc., Inc., 638 F. Supp.
742, 745-46 (C.D. Cal. 1986), a case presenting similar facts
where the plaintiff after suffering the alleged intolerable
working condition (a transfer to another position) chose, instead
of resigning, to stay in the position, to look for other
employment, to accept other employment, and *then* resign.  The
court held that such facts did not support a "constructive
termination" claim:

> If an employee wishes to claim that an employer's act
> should be deemed a constructive discharge, he must
> 'put up or shut up.'  If he wishes to claim that he
> had no choice but to leave, he must leave when the
> choice is posed, not after he has afforded himself
> the chance to avoid the unpleasant consequences of
> leaving [by obtaining another job].

Id. at 746.

     This is precisely what plaintiff did in this case: he
applied for a job with the City of Lincoln on July 5, 2002, while
working for defendant; during the course of the alleged
intolerable conditions (his reassignment and the disciplinary
action against him), he interviewed twice for the City of Lincoln
position; he thereafter accepted the City of Lincoln's offer of
employment on October 15, 2002; yet, he waited nearly a month
later to formally resign from defendant on November 11, 2002.
Under Wagner, said facts do not support a finding of constructive
termination.[5]  Plaintiff appears to have taken his time, weighed

---

[5]     It is noteworthy that plaintiff failed to discuss in
any respect the Wagner case in his papers; instead, in discussing
this claim he raised wholly inapplicable cases involving
retaliation claims, rather than constructive termination claims.
(continued...)

10

his options for employment, and only after he secured another job did he resign from his employment with defendant.  Defendant is entitled to summary judgment on this claim because a reasonable jury could not find that plaintiff resigned because of the alleged intolerable conditions.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is GRANTED.  The Clerk of the Court is directed to close this file.

IT IS SO ORDERED.

DATED: December 6, 2005.

                                    /s/ Frank C. Damrell Jr.
                                    FRANK C. DAMRELL, Jr.
                                    UNITED STATES DISTRICT JUDGE

---

[5](...continued)
At oral argument, the court gave plaintiff's counsel one last opportunity to distinguish Wagner which she attempted to do on the facts but the court was not persuaded.